IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |
|---|---|
| TRINA SOLAR CO., LTD, *ET AL.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN ALLIANCE FOR SOLAR MANUFACTURING, <br><br> Defendant-Intervenor. | Court No. 23-00213 |

DEFENDANT'S RESPONSE TO PLAINTIFFS' RULE 56.2
<u>MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, Jr.
Assistant Director

OF COUNSEL

JOSEPH GROSSMAN-TRAWICK
Attorney
Office of the Chief Counsel for Trade
   Enforcement & Compliance
U.S. Department of Commerce

KRISTIN E. OLSON
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-6299
kristin.olson@usdoj.gov

*Attorneys for the United States*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT PURSUANT TO RULE 56.2 ...................................................................... 1

    I.    Administrative Determination Under Review ...................................................... 1

    II.    Issue Presented For Review ................................................................................. 2

STATEMENT OF FACTS ................................................................................................. 2

SUMMARY OF THE ARGUMENT ................................................................................. 5

ARGUMENT ...................................................................................................................... 5

    I.    Standard of Review ............................................................................................. 5

    II.    Commerce's Calculation Of The Export Subsidy Adjustment Is
        Supported By Substantial Evidence And Is Otherwise In
        Accordance With Law ......................................................................................... 6

        A.    Legal Framework ................................................................................... 7

        B.    Commerce Properly Limited Its Export Subsidy
               Adjustment To The CVDs Imposed To Offset Export
               Subsidies ................................................................................................ 8

CONCLUSION .................................................................................................................. 16

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                    <u>PAGE(S)</u>

*Atl. Sugar, Ltd. v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984) ........................................................................ 6

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.*,
    5 F.4th 1367 (Fed. Cir. 2021) ........................................................................ 6

*Changzhou Trina Solar Energy Co. v. United States*,
    359 F. Supp. 3d 1329 (Ct. Int'l Trade 2019) ........................................... 14, 15

*Changzhou Trina Solar Energy Co. v. United States*,
    393 F. Supp. 3d 1245 (Ct. Int'l Trade 2019) ........................................... 14, 15

*Changzhou Trina Solar Energy Co. v. United States*,
    975 F.3d 1318 (Fed. Cir. 2020) ............................................... 7, 8, 14, 15, 16

*Cleo Inc. v. United States*,
    501 F.3d 1291 (Fed. Cir. 2007) ........................................................................ 6

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966) ........................................................................................ 6

*Fujitsu Gen. Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996) ........................................................................ 5

*INS v. Elias-Zacarias*,
    502 U.S. 478 (1992) ........................................................................................ 6

*Magnola Metallurgy, Inc. v United States*,
    508 F.3d 1349 (Fed. Cir. 2007) ........................................................................ 3

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ........................................................................ 6

*QVD Food Co. v. United States*,
    658 F.3d 1318 (Fed. Cir. 2011) ............................................................... 11, 13

*Tianjin Mach. Imp. & Exp. Corp. v. United States*,
    806 F. Supp. 1008 (Ct. Int'l Trade 1992) ..................................................... 11

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009) ........................................................................................ 5

## STATUTES

19 U.S.C. § 1516a(b)(1)-(2) ................................................................................. 10, 13

19 U.S.C. § 1516a(b)(1)(B) ....................................................................................... 5

19 U.S.C. § 1671(a)(1) ............................................................................................... 7

19 U.S.C. § 1677(5) .................................................................................................... 7

19 U.S.C. § 1677(5)(A) ............................................................................................. 7

19 U.S.C. § 1677(5)(D) ............................................................................................. 4

19 U.S.C. § 1677(5A) ............................................................................................. 8, 9

19 U.S.C. § 1677(5A)(B) ................................................................................... 4, 8, 9

19 U.S.C. § 1677(5A)(D) ................................................................................... 4, 8, 9

19 U.S.C. § 1677a(c)(1)(C) ............................................................................... passim

19 U.S.C. § 1677e(a) .................................................................................................. 8

19 U.S.C. § 1677e(a)-(b) ........................................................................................... 3

19 U.S.C. § 1677e(b)(1) ............................................................................................. 8

19 U.S.C. § 1677e(b)(2) .......................................................................................... 8, 9

## OTHER AUTHORITIES

*Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021–2022,*
        88 Fed. Reg. 62,049 (Dep't Commerce Sept. 8, 2023) .................................. 1, 4

*Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2017,*
        84 Fed. Reg. 56765 (Dep't of Commerce Oct. 23, 2019) (*CVD Final Results 2017*) ........ 3

*Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Antidumping Administrative Review, and Preliminary Determination of No Shipments; 2021-2022,*
        88 Fed. Reg. 14602 (Dep't of Commerce March 9, 2023) .................................. 2

*Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, and Rescission of Review in Part; 2017*,
    84 Fed. Reg. 15585 (Dep't of Commerce April 16, 2019) (*CVD Prelim Results 2017*).... 3

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
    87 Fed. Reg. 21619 (Dep't of Commerce April 12, 2022) ................................................ 2

Pursuant to Rule 56.2 of the Rules of United States Court of International Trade, defendant, the United States, respectfully submits this response in opposition to the motion for judgment on the administrative record filed by the plaintiffs, Trina Solar Co., Ltd., Trina Solar (Changzhou) Science & Technology Co., Ltd., Yancheng Trina Guoneng Photovoltaic Technology Co., Ltd. (d/b/a Yancheng Trina Solar Guoneng Science & Technology Co., Ltd.), Trina Solar Yiwu Technology Co., Ltd., Trina Solar (Su Qian) Technology Co., Ltd., Trina Solar (Yancheng Dafeng) Co., Ltd., Changzhou Trina Hezhong Photoelectric Co., Ltd. (d/b/a Changzhou Trina Hezhong PV Co., Ltd.), Changzhou Trina Solar Yabang Energy Co., Ltd., and Turpan Trina Solar Energy Co., Ltd. (collectively, "Trina").  ECF No. 19.  Trina challenges certain aspects of the final results issued by the Department of Commerce in the 2021-2022 antidumping duty administrative review covering certain crystalline silicon photovoltaic products from the People's Republic of China.  As demonstrated below, the challenged determination of the Department of Commerce is supported by substantial evidence and is otherwise in accordance with law.  Accordingly, we respectfully request that the Court deny Trina's motion for judgment upon the agency record and sustain Commerce's determination.

<u>STATEMENT PURSUANT TO RULE 56.2</u>

I.      <u>Administrative Determination Under Review</u>

The administrative determination under review is *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021–2022*, 88 Fed. Reg. 62,049 (Dep't Commerce Sept. 8, 2023) (P.R. 191)[1] (*Final Results*), and accompanying Issues

---

[1] "P.R." refers to documents from the public record, and "C.R." refers to documents from the confidential record.

and Decision Memorandum (IDM) (P.R. 190).  The review period is February 1, 2021, through January 31, 2022.  *See Final Results*.

II.    Issue Presented For Review

Whether Commerce's determination not to adjust Trina's U.S. prices for countervailing duties imposed to offset six additional subsidy programs beyond the five subsidy programs accounted for in prior segments of the proceeding is supported by substantial evidence and in accordance with law.

STATEMENT OF FACTS

On April 12, 2022, Commerce initiated the seventh administrative review of the antidumping duty (AD) order on certain crystalline silicon photovoltaic products (solar products) from the People's Republic of China (China).  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 21619 (Dep't of Commerce April 12, 2022) (P.R. 44).  On March 9, 2023, Commerce published the preliminary results.  *See Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Antidumping Administrative Review, and Preliminary Determination of No Shipments; 2021-2022*, 88 Fed. Reg. 14602 (Dep't of Commerce March 9, 2023) (*Preliminary Results*) (P.R. 151), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 148).

In the PDM, Commerce stated that, pursuant to 19 U.S.C. § 1677a(c)(1)(C), it would increase Trina's U.S. sales price by the amount of any countervailing duty (CVD) imposed on solar products as needed to offset an export subsidy.  PDM at 23.  Because Trina was not a mandatory respondent in the most recently completed review of the companion CVD order, *CVD Final Results* 2017, Commerce "adjusted Trina's U.S. prices by the export subsidy rates assigned to 'non-selected' companies." *Id*.; *see also Certain Crystalline Silicon Photovoltaic Products*

*from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2017*, 84 FR 56765 (Dep't of Commerce Oct. 23, 2019) (*CVD Final Results 2017*) and accompanying IDM at Appendix, *available at* https://access.trade.gov/Resources/frn/summary/prc/2019-23063-1.pdf (last visited April 29, 2024).

In the *CVD Final Results 2017*, Commerce found all the programs under review to be countervailable by applying an adverse inference while selecting from the facts otherwise available (adverse facts available) in accordance with 19 U.S.C. § 1677e(a)-(b).  *See* Domestic and Export Subsidy Adjustments Analysis Memorandum (March 10, 2023) (Subsidy Adjustment Memorandum) (P.R. 153) at 2; *see also Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, and Rescission of Review in Part; 2017*, 84 FR 15585 (Dep't of Commerce April 16, 2019) (*CVD Prelim Results 2017*) (unchanged in *CVD Final Results 2017*) and accompanying PDM at Appendix I, available at https://access.trade.gov/Resources/frn/summary/prc/2019-07540-1.pdf (last visited April 29, 2024).  Specifically, for each program "where Commerce previously found a program to be countervailable, in part because the program constituted a financial contribution by an authority and was specific, it continued to find the program to constitute a financial contribution by an authority and to be specific."  IDM at 9; *see also CVD Prelim Results 2017* PDM at 12-13.  As Commerce explained, it did not "revisit financial contribution and specificity determinations made in a prior segment of the same proceeding, absent the presentation of new facts or evidence" in accordance with its practice and judicially affirmed precedent.  *CVD Prelim Results 2017* PDM at 12 (citing *Magnola Metallurgy, Inc. v United States*, 508 F.3d 1349, 1353-56 (Fed. Cir. 2007)).

For programs "where Commerce had not {previously} determined whether a program constituted a financial contribution or was specific, it determined that the program constituted a financial contribution and was specific on the basis of {adverse facts available}."  IDM at 9; *see also CVD Prelim Results 2017* PDM at 12-13.  In the *CVD Prelim Results 2017*, Commerce stated that for such programs, it applied adverse facts available by looking "to the Initiation Checklist, which provides descriptions of these subsidy programs, including the basis on which we found that reasonably available information indicated that these programs constituted a financial contribution and were specific."  *CVD Prelim Results 2017* PDM at 13.  Moreover, as adverse facts available Commerce determined that those programs "constitute a financial contribution within the meaning of {19 U.S.C. § 1677(5)(D)} and are specific within the meaning of {19 U.S.C. § 1677(5A)(B) and (D)}."  *Id*.  Of the countervailed programs in the *CVD Final Results 2017*, Commerce stated that it had previously found five programs to be export contingent.  *See* Subsidy Adjustment Memorandum at 2.  In the *Preliminary Results*, Commerce "increased the price(s) of Trina's sale(s) of subject merchandise by the . . . sum of the export subsidy rates calculated for {those} five programs (*i.e.*, 3.06 percent)."  *Id*.

Trina submitted a case brief arguing, among other things, that Commerce should have adjusted Trina's U.S. prices for six additional countervailed programs from the *CVD Final Results 2017*.  Trina's Case Brief at 10 (P.R. 163) (C.R. 90).  Petitioner, American Alliance for Solar Manufacturing, submitted a rebuttal brief arguing that Commerce should continue to exclude those six additional programs from the export subsidy adjustment.  Petitioner's Rebuttal Brief at 7 (P.R. 165).  After considering interested party comments on the *Preliminary Results*, Commerce issued its *Final Results* on September 1, 2023.  *See Final Results*, 88 Fed. Reg. 62,049.  Commerce rejected Trina's argument and continued to calculate the export subsidy

adjustment based on only those five programs identified in the *Preliminary Results* pursuant to 19 U.S.C. § 1677a(c)(1)(C).  IDM at 10.  Commerce excluded the additional six programs identified by Trina because "there is no information on the record of this review indicating that {those six} programs at issue are export contingent or that Commerce determined that these programs were export-contingent in prior segments of the solar products CVD proceeding."  *Id.*

## SUMMARY OF THE ARGUMENT

Commerce's determination to exclude the six programs identified by Trina from the export subsidy adjustment is supported by substantial evidence and in accordance with law. Commerce properly limited the export subsidy adjustment to those five programs countervailed in the most recently completed review of the companion CVD order, which Commerce had found to be export contingent.  Trina's argument that Commerce failed to explain its determination is not supported by the record.  To the contrary, Commerce explained in the *Final Results* why it selected only those five programs in calculating the export subsidy adjustment. Commerce's decision to increase Trina's prices by only the CVDs imposed on export contingent programs is supported by substantial evidence and is otherwise in accordance with the law.

## ARGUMENT

I.     Standard of Review

The Court sustains any determination, finding, or conclusion by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise" unlawful.  *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *see also United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) ("The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence.").  Substantial evidence connotes "'more than a mere scintilla' and 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' taking

into account the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984). Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record does not render findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Indeed, when Congress entrusts an agency to administer a statute that demands inherently fact-intensive inquiries, agency conclusions may be set aside only if the record is "so compelling that no reasonable factfinder" could reach the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *see Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.*, 5 F.4th 1367, 1374 (Fed. Cir. 2021) (explaining that "highly deferential review standard recognizes Commerce's special expertise in antidumping duty investigations," and that Federal Circuit affords "tremendous deference" to Commerce's administration of antidumping laws). It is thus improper to overturn a determination "simply because the reviewing court would have reached a different conclusion based on the same record." *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted). A party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted).

II.  Commerce's Calculation Of The Export Subsidy Adjustment Is Supported By Substantial Evidence And Is Otherwise In Accordance With Law

Commerce correctly increased Trina's prices by the sum of CVDs imposed to offset export subsidies in the *CVD Final Results* 2017, as supported by the record. Trina claims that Commerce did not explain or support its determination to exclude from the adjustment the CVDs

imposed to offset the six subsidy programs identified.[2]  On the contrary, Commerce did explain

its decision.  Moreover, Trina fails to identify record evidence that would otherwise support a

determination that those six programs were export contingent and thus should have been

included.  Trina's arguments that Commerce contravened the statute are also unavailing.

Because Commerce complied with the statute and supported its determination with substantial

evidence, this Court should sustain Commerce's determination.

    A.    Legal Framework

When determining the estimated weighted average dumping margin for an exporter or

producer in an administrative review, Commerce compares the normal value of a product, which

reflects the price of the product in its home market or in a third country, to the export price or

constructed export price (the U.S. price), which reflects the price at which the product is sold to

an unaffiliated purchaser in the United States.  *See Changzhou Trina Solar Energy Co. v. United

States*, 975 F.3d 1318, 1322 (Fed. Cir. 2020) (*Changzhou III*).  Pursuant to 19 U.S.C.

§ 1677a(c)(1)(C), Commerce is required to increase the export price or the constructed export

price by "the amount of any {CVD} imposed on the subject merchandise…to offset an export

subsidy."  19 U.S.C. § 1677a(c)(1)(C).

Commerce must impose a CVD if it "determines that the government of a country . . . is

providing, directly or indirectly, a countervailable subsidy with respect to the manufacture,

production, or export of" subject merchandise.  19 U.S.C. § 1671(a)(1).  "{A} countervailable

---

[2] *See* Trina Br. at 10 (listing the following six programs in addition to those that Commerce included in the adjustment:  Income Tax Reductions for Export-Oriented Enterprises, Tax Refunds for Reinvestment of FIE Profits in Export-Oriented Enterprises, Awards for Jiangsu Famous Brand Products, Export Product Research and Development Fund, Subsidies for Development of "Famous Brands" and China World Top Brands, Funds for Outward Expansion of Industries in Guangdong Province).

subsidy is a financial contribution, income or price support, or funding mechanism provided by

an authority, such as a government, to a person with a benefit . . . thereby conferred."

*Changzhou III*, 975 F.3d at 1326 (quoting 19 U.S.C. § 1677(5)) (internal quotation marks

omitted).  In addition to conferring a benefit, a subsidy must be "specific."  19 U.S.C.

§ 1677(5)(A)).  There are various bases for specificity:  a subsidy may be an "export subsidy,"

"an import substitution subsidy," or a "domestic subsidy" meeting certain requirements

described in 19 U.S.C. § 1677(5A)(D).  19 U.S.C. § 1677(5A).  As relevant to this case, "{a}n

export subsidy is a subsidy that is, in law or in fact, contingent upon export performance."  19

U.S.C. § 1677(5A)(B).  Thus, when Commerce determines, in accordance with 19 U.S.C.

§ 1677(5A)(B), that a subsidy is contingent upon export performance and subsequently

countervails that subsidy, Commerce must then adjust the U.S. price determined in the

companion AD proceeding by the amount of any CVD ultimately imposed on subject

merchandise as a result of this finding.  *See* 19 U.S.C § 1677a(c)(1)(C).

     In reaching this determination, Commerce may "use facts otherwise available" as a gap-

filler in certain circumstances, such as when necessary information is missing from the record.

19 U.S.C. § 1677e(a).  Additionally, Commerce may "use an inference that is adverse to the

interests of {a} party in selecting from among the facts otherwise available" if that party "has

failed to cooperate by not acting to the best of its ability to comply with a request for

information."  19 U.S.C. § 1677e(b)(1).  In applying adverse facts available, Commerce may rely

on information derived from the petition, a final determination in an investigation, a previous

review, or any other information placed on the record.  19 U.S.C. § 1677e(b)(2).

     B.    Commerce Properly Limited Its Export Subsidy Adjustment To The CVDs
              Imposed To Offset Export Subsidies

     Commerce properly limited its calculation of the export subsidy adjustment to include the

CVDs imposed on the five export contingent programs identified in the *Final Results*. Before making an export subsidy adjustment, "Commerce must first have imposed {CVDs} to offset an export subsidy." IDM at 9. Accordingly, Commerce looked to the *CVD Final Results 2017* to determine whether Commerce imposed CVDs on any export subsidy programs. *Id.*

In the *CVD Final Results 2017*, Commerce found 79 subsidy programs countervailable through the application of adverse facts available. *See id.*; *see also CVD Prelim Results 2017* PDM at Appendix I. In that review, Commerce: (1) continued to find a subsidy program countervailable if Commerce had previously found the subsidy program countervailable because, in part, it constituted a financial contribution and was specific; and (2) when Commerce had not previously made such findings, Commerce applied adverse facts available to reasonably available information and descriptions in the Initiation Checklist to determine that the programs constituted a financial contribution and were specific as an export subsidy or domestic subsidy pursuant to 19 U.S.C. § 1677(5A)(B) and (D) respectively. *See CVD Prelim Results 2017* PDM at 12-13.

Accordingly, Commerce identified the "programs under consideration in {the *CVD Final Results 2017*} that Commerce previously found to be countervailable and specific *because they were export contingent*"—there were five such programs. IDM at 9 (emphasis added). Then, Commerce "adjusted Trina's reported export prices by the {CVDs} imposed on subject merchandise to offset subsidies provided under {those five} programs because {those} programs were specifically found to provide export subsidies." *Id.* For each of those five programs, Commerce identified the document in which it had previously found the program to be an export subsidy. *See id.*; *see also* Subsidy Adjustment Memorandum at 2. Commerce properly increased Trina's prices by the CVDs imposed for the five programs found to constitute export

subsidies in the most recently completed CVD review and offered an explanation supported by substantial record evidence.  IDM at 8-10.  Thus, Commerce's determination comports with law because it increased Trina's prices by "the amount of any {CVD} imposed on the subject merchandise… to offset an export subsidy" in accordance with the statute.  19 U.S.C. § 1677a(c)(1)(C).

Trina claims that Commerce did not explain "why it included five, but not all eleven programs for which the specificity of the program was based on export contingency."  Trina Br. (ECF No. 19) at 8.  That is not correct.  First, as discussed above, Commerce explained why it limited the adjustment to those five programs—because those are the five programs under consideration in the *CVD Final Results 2017* that had been found specific as an export subsidy. *See* IDM at 9; *see also* Subsidy Adjustment Memorandum at 2.

Commerce also clearly explained why it did not include the six additional programs proffered by Trina.  *See* IDM at 8-10; *see also* Subsidy Adjustment Memorandum at 2. Although those six programs were also found to be countervailable as a result of Commerce's application of adverse facts available, "Commerce did not indicate that it based the specificity determination on a finding that the programs were *export contingent*."  IDM at 10 (emphasis added).  As Commerce explained, there are several bases for finding a program "specific" other than export contingency.  *Id*. at 10.  Thus, Commerce reasoned that "{w}ithout any indication that the {six} programs {identified by Trina} are export contingent, it would be inappropriate to assume that Commerce's {adverse facts available} specificity determination in {*CVD Final Results 2017*} indicates that the programs are export contingent."  *Id*.  As Commerce stated, "there is no information on the record of this review indicating that the {six} programs at issue are export contingent or that Commerce determined that these programs were export contingent

in prior segments of the solar products CVD proceeding." *Id*. at 10.  By statute, Commerce

bases its determinations on the record of the administrative proceeding before it.  19 U.S.C.

§ 1516a(b)(1)-(2).  Further, it is the burden of interested parties to develop the record.  *See QVD*

*Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (quoting *Tianjin Mach. Imp. &*

*Exp. Corp. v. United States*, 806 F. Supp. 1008, 1015 (Ct. Int'l Trade 1992)).  By offering no

additional record evidence to support a finding that these programs were export contingent, Trina

failed to demonstrate that Commerce had found those programs to be export contingent on the

record, and Commerce appropriately excluded those six programs when calculating the export

subsidy adjustment.  IDM at 10.

 Trina argues that "{e}ssentially, Commerce's determination . . . is these six programs

were found to be specific either as import substitution subsidies or domestic subsidies," a

determination that Trina alleges "is unsupported by any evidence and cannot be sustained."

Trina Br. at 9.  To the contrary, in these *Final Results*, Commerce did not determine those six

programs were specific as either import subsidies or domestic subsidies.  IDM at 8-10.  Rather,

Commerce explained that there are various bases for specificity under the statute and there is no

record evidence indicating that those six programs are export contingent.  IDM at 9.  Thus, rather

than making any determination as to the bases of the six programs' specificity in the *Final*

*Results*, Commerce stated that "{w}ithout any indication that the programs are export

contingent, *it would be inappropriate to assume* that Commerce's {adverse facts available}

specificity determination in {*CVD Final Results 2017*} indicates that the programs are export

contingent." *Id*. (emphasis added).

 Of the 79 programs found to be countervailable in the *CVD Final Results 2017*, only five

had previously been found to be export contingent, whether on the basis of adverse facts

available or not, and therefore, Commerce limited the export subsidy adjustment to the CVDs

applied to those programs.  IDM at 9-10.  Trina's argument, by extension, would have

Commerce include in the export subsidy adjustment all programs from the *CVD Final Results*

*2017* that Commerce did not previously find specific on a basis *other* than being export

contingent.  That is not what the statute requires.  The statute does not direct Commerce to adjust

a respondent's U.S. price by *any* or *all* subsidies, but rather, only "export subsidies."  19 U.S.C.

§ 1677a(c)(1)(C).  Thus, Commerce properly excluded programs that "Commerce did not

indicate … were export contingent" and for which Commerce made no finding as to the basis for

specificity, including the six programs identified by Trina.  IDM at 10.

Trina's argument is based on an unsubstantiated assumption—that the six programs it

identifies are export contingent.  *See* Trina Br. at 8.  Trina argues that "{w}here the *Petition*, the

*Initiation Checklis*t, or a prior Commerce Determination based or alleged specificity, in whole or

in part, on export-contingency and Commerce countervailed the program in {*CVD Prelim*

*Results 2017*}, Commerce must increase Trina's U.S. selling price to adjust for the export

subsidy countervailed."  *Id*.  However, Trina does not identify any record evidence that

demonstrates that those six programs were determined to be specific "in whole or in part" based

on export contingency, and it fails to explain why those programs should be included in the

offset.  *See id*.  Conversely, as Commerce explained in the IDM, nothing in the *CVD Final*

*Results 2017* or on the record of the underlying review indicates "that the programs at issue are

export contingent or that Commerce determined that these programs were export-contingent in

prior segments of the solar products CVD proceeding."  IDM at 10.  Thus, Commerce

sufficiently explained its decision and supported it with record evidence.  Trina's arguments to

the contrary are unavailing.

Trina argues that "Commerce's determination that it does not know the basis for specificity skirts is {sic} obligation under the statute and ignores the decision in *CVD Final Results 2017*." Trina Br. at 9. Trina contends that in the *CVD Prelim Results 2017*, Commerce looked to the Initiation Checklist for descriptions for these subsidy programs and that "there is no amorphous '{adverse facts available}' basis for specificity." *Id*. at 9-10. Further, that "Commerce's refusal to acknowledge those descriptions of specificity render its decision here lacking a basis in substantial evidence." *Id*. at 10. However, as discussed above, Commerce found that there was no evidence indicating these six programs were export contingent on the record of this review, in the *CVD Final Results 2017*, or in prior segments of the CVD proceeding. IDM at 10. Trina cannot identify a finding of specificity based on export contingency for any of the six identified programs. Notably, Trina fails to articulate at the administrative level and in the present litigation precisely what evidence Commerce ignored. *See generally* Trina Br.; *see also* Trina Case Br. (April 18, 2023) (P.R. 163) (C.R. 90). As discussed above, Trina bears the burden of developing the record and Commerce is limited to the record before it. *See QVD Food Co. v. United States*, 658 F.3d at 1324; *see also* 19 U.S.C. § 1516a(b)(1)-(2).

Trina argues that, "{e}ven if Commerce applied {adverse facts available} in making the decision to countervail these programs in *CVD Prelim Results 2017*, the application of {adverse facts available} did not excuse Commerce from making a specificity determination." Trina Br. at 7. Trina cites *Changzhou III* for the proposition that "the use of {adverse facts available} 'does not obviate Commerce's obligation to make the applicable determination' and it also does not obviate Commerce's obligation to support any such determinations with substantial

evidence." *Id.* (citing *Changzhou III*, 975 F.3d at1318 (Fed. Cir. 2020)).  However, Commerce's determination is consistent with the statute and *Changzhou III*.

First, in the *Final Results* Commerce did not apply adverse facts available to calculate the export subsidy adjustment.  IDM at 8-10.  Second, as explained previously, in the *CVD Prelim Results 2017*, as adverse facts available, Commerce either continued to find a subsidy program countervailable when Commerce had previously found that it constituted a financial contribution and was specific, or when Commerce had not previously made such findings, Commerce applied adverse facts available to reasonably available information to determine that the programs constituted a financial contribution and were specific as an export subsidy or domestic subsidy. *See CVD Prelim Results 2017* PDM at 12-13.

Commerce's determination is lawful, and *Changzhou III* does not suggest otherwise.  In *Changzhou I*, the Court held that "Commerce's decision to deny an offset for the {CVDs} imposed {on the export buyer's credit program (EBCP)} is contrary to law because in the parallel CVD investigation Commerce necessarily found that the {EBCP} was an export subsidy." *Changzhou Trina Solar Energy Co. v. United States*, 359 F. Supp. 3d 1329, 1339 (Ct. Int'l Trade 2019) (*Changzhou I*) at 1339.  The Court observed that, in the final determination of the companion CVD investigation, Commerce determined that the EBCP "provides loans at preferential rates for the purchase of exported goods from the PRC." *Id*.  The Court also recognized that "Commerce explicitly {stated} that it {relied} on {adverse facts available} to determine that respondents *used* the {EBCP}, not that the program was specific." *Id*. (emphasis added).  Thus, in *Changzhou I*, the Court rejected Commerce's denial of the offset for the EBCP *because it had previously found the EBCP to be an export subsidy* but applied adverse facts available to find that respondents benefitted from the program.  *Id*.  In *Changzhou II*, the Court

upheld Commerce's results of redetermination in which it applied the adjustment to the CVD imposed on the EBCP. *See Changzhou Trina Solar Energy Co. v. United States*, 393 F. Supp. 3d 1245, 1250 (Ct. Int'l Trade 2019) (*Changzhou II*). Again, the Court stated that "Commerce did not use {adverse facts available} to conclude the {EBCP} was contingent on export performance." *Id*.

In *Changzhou III*, the Federal Circuit affirmed *Changzhou I* and *Changzhou II*. 975 F.3d at 1328. As the Court explained, "{i}n the companion CVD investigation, Commerce first determined that the {EBCP} was countervailable as an export subsidy." *Id*. Then, the Court found that Commerce applied adverse facts available to determine that Trina had used the {EBCP} because Commerce was unable to verify Trina's non-use of the program. *Id*. Thus, the Court held that because Commerce "{had} determined that the {EBCP} was an export subsidy and imposed a {CVD} on Trina's merchandise as a result, Commerce was required to increase Trina's export price by the offset." *Id*.

The facts in *Changzhou III* differ critically from those of this case. *See Changzhou III*, 975 F.3d at 1327-1331; *see also Changzhou I*, 359 F. Supp. 3d at 1329-39. In this case, unlike in *Changzhou I*, Commerce has not previously found that the identified programs were an export subsidy, and plaintiffs cannot identify any such finding. *See Changzhou I*, 359 F. Supp. 3d at 1329-39. In *Changzhou I*, the Court rejected Commerce's decision not to adjust for the CVD imposed on an *export subsidy* that was found to be used by the respondent on the basis of adverse facts available in the companion CVD investigation. *Id*. Commerce did not use adverse facts available to find the EBCP was specific; rather, the Court of International Trade and the Federal Circuit explicitly stated that Commerce had previously found the EBCP to be export contingent. *See id.* at 1339; *see also Changzhou III*, 975 F.3d at 1328. In this case, as

Commerce explained, there is no information indicating that Commerce ever found that the six programs listed by Trina are export contingent.  IDM at 10.  Moreover, Trina has not identified any evidence stating as much.  *See generally* Trina Br.  Because these programs have not been determined to be export subsidies, Commerce's decision not to include these programs in the export subsidy offset calculation is appropriate.

Finally, Trina misunderstands Commerce's determination—Trina assumes that Commerce refused to calculate the adjustment for subsidies countervailed on the basis of adverse facts available in contravention of *Changzhou III*.  *See* Trina Br. at 7-10.  However, the five programs that Commerce adjusted Trina's prices for were countervailed on the basis of adverse facts available in the CVD *Final Results 2017*.  IDM at 9-10.  Contrary to Trina's claim, Commerce did adjust Trina's price for the CVDs imposed to offset those programs despite being countervailed on the basis of adverse facts available because Commerce had previously found them to be export contingent, just as it had with the EBCP in *Changzhou III*.  975 F.3d at 1328. Thus, Commerce's determination comports with *Changzhou III* and 19 U.S.C. § 1677a(c)(1)(C) because it increased Trina's prices by the "amount of any {CVD imposed} … to offset an export subsidy."  *See Changzhou III*, 975 F.3d at 1328*; see also* 19 U.S.C. § 1677a(c)(1)(C). Furthermore, Commerce's determination is supported by substantial evidence because, unlike those programs identified by Trina, record evidence demonstrates that the five programs for which Commerce adjusted Trina's prices were explicitly found to be export contingent.

## CONCLUSION

For these reasons, we respectfully request that the Court deny the plaintiffs' motion, sustain Commerce's final results, and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

s/ Kristin E. Olson
KRISTIN E. OLSON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6299
Email: kristin.olson@usdoj.gov

*Attorneys for the United States*

OF COUNSEL

JOSEPH GROSSMAN-TRAWICK
Attorney
Office of the Chief Counsel for Trade
    Enforcement & Compliance
U.S. Department of Commerce

April 29, 2024

17

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that Defendant's Response to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record, filed on April 29, 2024, complies with the word limitation requirement. The word processing software used to prepare this brief indicates there are a total of 4,811 words, excluding the portions of the brief identified in the rules.

<u>s/ Kristin E. Olson</u>
Kristin E. Olson