Slip Op. 24-96

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **TRINA SOLAR CO., LTD. ET AL,** Plaintiffs, v. **UNITED STATES,** Defendant, **AMERICAN ALLIANCE FOR SOLAR MANUFACTURING,** Defendant-Intervenor. | Before: Claire R. Kelly, Judge<br><br>Court No. 23-00213 |

## OPINION AND ORDER

[Remanding U.S. Department of Commerce's final results and final determination.]

Dated: August 20, 2024

Jonathan M. Freed, MacKensie R. Sugama, Kenneth N. Hammer, and Robert G. Gosselink, Trade Pacific PLLC, of Washington, D.C., for plaintiffs Trina Solar Co., Ltd., Trina Solar (Changzhou) Science & Technology Co., Ltd., Yancheng Trina Guoneng Photovoltaic Technology Co., Ltd. d/b/a Yangcheng Trina Solar Guoneng Science & Technology Co., Ltd., Trina Solar Yiwu Technology Co., Ltd., Trina Solar (Su Qian) Technology Co., Ltd., Trina Solar (Yancheng Dafeng) Co., Ltd., Changzhou Trina Hezhong Photoelectric Co., Ltd. d/b/a Changzhou Trina Hezhong PV Co., Ltd., Changzhou Trina Solar Yabang Energy Co., Ltd., Turpan Trina Solar Energy Co., Ltd.

Kristin Elaine Olson, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States. Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel was Joseph Grossman-Trawick, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Timothy C. Brightbill, Elizabeth S. Lee, Kimberly A. Reynolds, Laura El-Sabaawi, Paul A. Devamithran, and Theodore P. Brackemyre, Wiley Rein, LLP, of Washington, D.C., for defendant-intervenor American Alliance for Solar Manufacturing.

    Kelly, Judge: Before the Court is a motion for judgment upon the agency record filed by Trina Solar Co., Ltd., Trina Solar (Changzhou) Science & Technology Co., Ltd., Yancheng Trina Guoneng Photovoltaic Technology Co., Ltd. d/b/a Yancheng Trina Solar Guoneng Science & Technology Co., Ltd., Trina Solar Yiwu Technology Co., Ltd., Trina Solar (Su Qian) Technology Co., Ltd., Trina Solar (Yancheng Dafeng) Co., Ltd., Changzhou Trina Hezhong Photoelectric Co., Ltd. d/b/a Changzhou Trina Hezhong PV Co., Ltd., Changzhou Trina Solar Yabang Energy Co., Ltd., and Turpan Trina Solar Energy Co., Ltd. (collectively "Trina"). See generally Pls.' Mot. J. Agency Rec., Feb. 29, 2024, ECF No. 19 ("Pls. Mot."). Specifically, Trina argues that the Department of Commerce ("Commerce") should have adjusted Trina's U.S. price to account for countervailing duty ("CVD") rates for eleven, rather than only five, subsidy programs for which CVDs were imposed in the most recently completed companion CVD review. Pls. Mot. at 6–10. For the following reasons, Commerce's determination is remanded for further consideration.

## BACKGROUND

    On April 12, 2022, Commerce published the initiation notice of antidumping duty ("ADD") and CVD administrative reviews of certain crystalline silicon photovoltaic products from the People's Republic of China ("China") concerning the period of review ("POR") of February 1, 2021, through January 31, 2022. See

Court No. 23-00213                                                                                               Page 3

generally <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews</u>, 87 Fed. Reg. 21,619 (Dep't Commerce Apr. 12, 2022).  On July 22, 2022, Commerce issued its initial ADD and double remedies questionnaires to Trina for the administrative review.  <u>See generally</u> Letter re: Administrative Review of the Antidumping Duty Order on Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Request for Information, PD 36, bar code 4266959-01 (July 22, 2022); <u>see also</u> Letter re: Administrative Review of the Antidumping Duty Order on Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Double Remedies Questionnaire at 3–9, PD 40, bar code 4266977-01 (July 22, 2022), (collectively "Questionnaires").

On March 9, 2023, Commerce published its preliminary determination.  <u>See Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China; 2021–2022</u>, 88 Fed. Reg. 14,602 (Dep't of Commerce Mar. 9, 2023) (preliminary results, partial rescission, and preliminary determination of no shipments) ("<u>Preliminary Results</u>") and accompanying Prelim. Decision Memo. ("Prelim. Decision Memo.").  Commerce preliminarily determined that in accordance with Section 772(c)(1)(C) of the Tariff Act,[1] as amended, 19 U.S.C. § 1677a(c)(1)(C), Trina's U.S. sales price should be increased by the amount of any CVD imposed on solar products as needed to offset an export subsidy.  Prelim. Decision Memo. at 23.

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

In the final determination of the CVD review in 2017, the most recently completed review, Commerce found eleven programs to be countervailable by applying an adverse inference while selecting from the facts otherwise available in accordance with 19 U.S.C. § 1677e(a)–(b). See <u>Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China; 2017</u>, 84 Fed. Reg. 56,765, 56,766 (Dep't Commerce Oct. 23, 2019) (final results of CVD administrative review) ("<u>CVD Final Results 2017</u>") and accompanying Issues and Decision Memo. ("CVD Final Decision Memo. 2017"); <u>see also</u> Domestic and Export Subsidy Adjustments Analysis Memo. at 2, PD 153, bar code 4351986-01 (March 10, 2023) ("Subsidy Adjustment Memo."); <u>see also</u> <u>Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China; 2017</u>, 84 Fed. Reg. 15,585 (Dep't of Commerce April 16, 2019) (preliminary results) and accompanying Prelim. Decision Memo. at App'x I ("CVD Prelim. Decision Memo. 2017"). In the present ADD review, Commerce concluded that five of those programs had previously been found to be export contingent. <u>Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China; 2021–2022</u>, 88 Fed. Reg. 62,049 (Dep't Commerce Sept. 8, 2023) (final results of ADD review and final determination of no shipments) ("<u>Final Results</u>") and accompanying Issues and Decision Memo. at 9 ("Final Decision Memo.") (collecting sources). However, Commerce concluded that for the remaining six

programs ("Subject Programs"),[2] "Commerce did not indicate that it based the specificity determination on a finding that the programs were export contingent." Final Decision Memo. at 10. Commerce thus "adjusted Trina's U.S. prices by the export subsidy rates assigned to 'non-selected' companies" for the five programs previously found to be export contingent. Prelim. Decision Memo. at 23; see also CVD Prelim. Decision Memo. 2017 at App'x I.

Trina submitted its case brief commenting on Commerce's preliminary determination in the ADD review on April 17, 2023. See generally [Trina's] Case Brief, PD 163, CD 90, bar code 4366918-01 (Apr. 17, 2023) ("Trina Case Br."). Trina argued that in addition to offsetting the U.S. sales price of the five programs identified by Commerce as export subsidies in the Preliminary Results, Commerce should have also offset its U.S. sales price for the Subject Programs. See id. at 9–11.

Commerce issued its final determination on September 1, 2023. See generally Final Results, 88 Fed. Reg. 62,049. Commerce rejected Trina's argument and continued to calculate the export subsidy adjustment based on only the five programs identified in the Preliminary Results pursuant to 19 U.S.C. § 1677a(c)(1)(C). Final Decision Memo. at 10. Commerce excluded the Subject Programs identified by Trina

---

[2] Those programs are: (1) Income Tax Reductions for Export-Oriented Enterprises; (2) Tax Refunds for Reinvestment of FIE Profits in Export-Oriented Enterprises; (3) Awards for Jiangsu Famous Brand Products; (4) Export Product Research and Development Fund; (5) Subsidies for Development of "Famous Brands" and China World Top Brands; and (6) Funds for Outward Expansion of Industries in Guangdong Province. Final Decision Memo. at 9 n.44 (citing Trina Case Br. at 10–11).

because the evidence in the record provided no indication that the Subject Programs are export contingent and Commerce had not found the Subject Programs to be export contingent in earlier segments of the solar products CVD proceeding. Id.

On February 29, 2024, Trina filed the instant motion before the Court, arguing that Commerce's determination is unsupported by substantial evidence. See Pls. Mot. at 9. Defendant filed its corrected response to Trina's motion on May 3, 2024, requesting that the Court deny Trina's motion and sustain Commerce's Final Results. See generally Def.'s Resp. [Pls. Mot.], May 3, 2024, ECF No. 23 ("Def. Resp."). Defendant-Intervenor American Alliance for Solar Manufacturing similarly filed its response in opposition to Trina's motion on May 13, 2024. See generally Def.-Int. Am. All. Solar Manufacturing Resp. [Pls. Mot.], May 13, 2024, ECF No. 24. Trina filed its reply on June 28, 2024. See generally Pls. Reply Br., June 28, 2024, ECF No. 29 ("Pls. Reply").

## JURISDICTION AND STANDARD OF REVIEW

The Court exercises jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final determination in an administrative review of an ADD order. Commerce's determination will be sustained unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Huaiyin Foreign Trade

Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

## DISCUSSION

Trina argues that Commerce's determination is unsupported by substantial evidence because Commerce failed to offset the U.S. sales price by the CVD imposed on Subject Programs in the companion CVD review. Pls. Mot. at 9. Defendant rejects Trina's argument, reasoning that Commerce never determined that the Subject Programs were export contingent and thus should not be offset pursuant to 19 U.S.C. § 1677a(c)(1)(C). Def. Resp. at 10. Id. Based on the following considerations, Commerce's refusal to offset the U.S. sales price by the duty imposed by reason of the Subject Programs is unsupported by substantial evidence.

This case involves the intersection of ADD and CVD law. Commerce shall impose ADD on foreign merchandise that is sold or likely to be sold within the United States for "less than its fair value" ("LTFV"). 19 U.S.C. § 1673(1). Sales are LTFV where the normal value (the price a producer charges in its home market)[3] exceeds

---

[3] Under the statute, normal value refers to:

> the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price[.]

19 U.S.C. § 1677b(a)(1)(B)(i).

Court No. 23-00213 Page 8

the export price (the price of the product in the United States).⁴ 19 U.S.C. § 1677b(a)(1)(B)(i); 19 U.S.C. § 1677a(a); see also Changzhou Trina Solar Energy Co. v. United States, 975 F.3d 1318, 1322 (Fed. Cir. 2020) ("Trina II"). In an ADD case, Commerce determines whether merchandise is being sold at LTFV in the United States "by comparing the weighted average of the normal values to the weighted average of the export prices . . . for comparable merchandise." 19 U.S.C. § 1677f-1(d)(1).⁵

In a CVD case, where Commerce "determines that the government of a country or any public entity within the territory of a country is providing, directly or indirectly, a countervailable subsidy" that causes injury to a U.S. industry, it imposes a CVD on such merchandise. 19 U.S.C. § 1671(a)(1). A "countervailable subsidy is a subsidy . . . which is specific."⁶ 19 U.S.C. § 1677(5)(A). A specific subsidy is (i) a

---

⁴ Under the statute, export price means :

> the price at which the subject merchandise is first sold (or agreed to be sold) before the date of importation by the producer or exporter of the subject merchandise outside of the United States to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to the United States, as adjusted under [19 U.S.C. § 1677a(c)].

19 U.S.C. § 1677a(a).

⁵ When determining normal value, Commerce need not consider sales made outside of the "ordinary course of trade." 19 U.S.C. § 1677b(a)(1)(B)(i). Pursuant to the statute, "ordinary course of trade" specifically excludes sales made below the cost of production. 19 U.S.C. § 1677(15)(A).

⁶ A subsidy exists where a government

(footnote continued)

Court No. 23-00213 Page 9

subsidy "that is, in law or in fact, contingent upon export performance"; (ii) an import substitution subsidy which is "contingent upon the use of domestic goods over imported goods"; or (iii) a domestic subsidy which is limited, "in law or in fact, to an enterprise or industry within the jurisdiction of the authority providing the subsidy." 19 U.S.C. § 1677(5A)(B)–(D).

When merchandise under review is subject to both ADDs and CVDs, Commerce shall, when calculating a respondent's ADD rate, increase the respondent's export price or constructed export price by the amount of any CVD imposed to offset an export subsidy. 19 U.S.C. § 1677a(c)(1)(C); Trina II, 975 F.3d at 1322. "The offset is designed to prevent the double application of duties when the subsidies and dumping are related." Trina II, 975 F.3d at 1330 (quoting Dupont Teijin Films USA, LP v. United States, 273 F. Supp. 2d 1347, 1349 n.4 (Ct. Int'l Trade 2003)); see also Jinko Solar Co., Ltd. v. United States, 961 F.3d 1177, 1182 (Fed. Cir. 2020) ("Jinko II") (reasoning that the purpose of the dumping offset is to "avoid the double application of duties"). The rationale behind Section 1677a(c)(1)(C) presumes

---

(i) provides a financial contribution,
(ii) provides any form of income or price support within the meaning of Article XVI of the GATT 1994, or
(iii) makes a payment to a funding mechanism to provide a financial contribution, or entrusts or directs a private entity to make a financial contribution, if providing the contribution would normally be vested in the government and the practice does not differ in substance from practices normally followed by governments[.]

19 U.S.C. § 1677(5)(B).

Court No. 23-00213 Page 10

that an export subsidy contributes to the antidumping violation.  See Jinko II, 961 F.3d at 1182.  Thus, where there are companion ADD and CVD proceedings and Commerce determines that there are countervailable export contingent subsidies, Commerce will offset the duty imposed to countervail those export contingent subsidies in the companion ADD proceeding.  See 19 U.S.C. § 1677a(c)(1)(C).

Where information necessary for Commerce to assess whether there is a countervailable subsidy is missing from the record, Commerce uses statutory tools to select facts otherwise available to fill in the missing information and make its determination.  19 U.S.C. § 1677e(a)–(b).  As this Court has previously explained,

> During the course of an investigation or review, Commerce may have difficulty accessing and verifying the information it needs to satisfy the statutory elements for imposing a CVD.  Subject to 19 U.S.C. § 1677m(d), Commerce shall use facts otherwise available to reach its final determination when "necessary information is not available on the record," a party "withholds information that has been requested by [Commerce]," fails to provide the information timely or in the manner requested, "significantly impedes a proceeding," or provides information Commerce is unable to verify.  19 U.S.C. § 1677e(a).  Further, under certain circumstances, such as a party's failure to comply to the best of its ability with a request for information, Commerce may "use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b).

Changzhou Trina Solar Energy Co. v. United States, 359 F. Supp. 3d 1329, 1338 (Ct. Int'l Trade 2019) ("Trina I").  Where Commerce uses an adverse inference when selecting among facts available, it engages in a two-step process that requires Commerce to identify (i) information missing from the record so that it may select

from facts otherwise available to replace that missing information, and, if appropriate, (ii) use an adverse inference when selecting among the facts otherwise available. 19 U.S.C. § 1677e(a)–(b). Thus, when information concerning the specificity of a subsidy is missing from the record, Commerce uses facts otherwise available, with or without an adverse inference, to determine whether a particular program is a countervailable subsidy, because it is either an export contingent subsidy, a domestic substitution subsidy or a domestic specific subsidy. See, e.g., Risen Energy Co., Ltd. v. United States, 477 F. Supp. 3d 1332, 1347–48 (Ct. Int'l Trade 2020). Commerce's use of facts otherwise available with an adverse inference does not obviate the need for it to satisfy the elements of the statute, including a determination of what type of subsidy is involved. Trina I, 359 F. Supp. 3d at 1338–39.

Thus, even where Commerce determines a subsidy is countervailable using facts otherwise available with an adverse inference, it necessarily determines the type of subsidy involved. The Court of Appeals has explained,

> [facts available with an adverse inference] allows Commerce to "reach[ ]" a "determination" on an incomplete record. It does not obviate Commerce's obligation to make "the applicable determination." Nor does it obviate Commerce's obligation to support any such determinations "[with] substantial evidence." Before imposing a [CVD], Commerce must necessarily determine that a subsidy is "specific"—that it is an "export subsidy," "import substitution subsidy," or a "[d]omestic subsidy" meeting certain requirements—even if it must use [facts available with an adverse inference] to do so. Otherwise, Commerce cannot impose a [CVD] to offset that subsidy.

Trina II, 975 F.3d at 1328–29 (internal citations omitted).

Court No. 23-00213                                                                                                  Page 12

Moreover, consistent with its statutory mandate, Commerce, as a matter of practice, offsets the export price in companion antidumping investigations or reviews even when it uses facts otherwise available with an adverse inference, when the facts otherwise available indicate the program was an export subsidy. See, e.g., Risen, 477 F. Supp. 3d at 1347–48; Jinko Solar Co., Ltd. v. United States, 229 F. Supp. 3d 1333, 1358 (Ct. Int'l Trade 2017) ("Jinko I"), aff'd, Jinko II, 961 F.3d 1177. In Risen, the Court concluded that Commerce reasonably offset subsidies which it previously determined were countervailable using facts otherwise available with an adverse inference. 477 F. Supp. 3d at 1347–48. In the companion ADD decision, Commerce determined that the preliminary CVD decision had concluded the subsidies were tied to exports, even though the final determination only indicated that the program was countervailable using facts otherwise available with an adverse inference. Risen, 477 F. Supp. 3d at 1348 (citing Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China; 2015, 83 Fed. Reg. 34,828 (Dep't Commerce July 23, 2018) (final results)).[7]

---

[7] In Risen, Commerce had determined that the program at issue was export contingent in the preliminary determination. 477 F. Supp. 3d at 1347. Here, Commerce distinguishes between the five programs for which it provides an offset and the Subject Programs by noting that the former had "previously been found to be countervailable and specific because they were export contingent," Final Decision Memo at 9, while this record lacks evidence as to whether the latter were export contingent. Id. at 10. By implication, Commerce seems to argue that there was never a determination made as to whether the Subject Programs were export contingent.

(footnote continued)

Likewise, in Jinko I, Commerce offset the cash deposit rate in a companion antidumping investigation by the export subsidy in the CVD case, which was calculated based on facts otherwise available using an adverse inference. See Jinko I, 229 F. Supp. 3d at 1358. In its determination in that case, Commerce stated that it offsets export subsidies and it "adheres to this practice regardless of whether the export subsidy rate is based on AFA." Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China, 79 Fed. Reg. 76,970 (Dep't Commerce Dec. 23, 2014) (final determination) and accompanying Issues and Decision Memo. at 39 (first citing Pre-Stressed Concrete Steel Wire Strand From the People's Republic of China, 75 Fed. Reg. 28,560, 28,563 (Dep't Commerce May 21, 2010); then citing Pre-Stressed Concrete Steel Wire Strand From the People's Republic of China, 75 Fed. Reg. 28,557 (Dep't Commerce May 21, 2010) (final determination) and accompanying Issues and Decision Memo. at "Grant Programs Treated as Export Subsidies Pursuant to [facts available with an adverse inference]"; then citing Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China, 77 Fed. Reg. 63,791, 63,796 (Dep't Commerce Oct. 17, 2012) (final ADD determination); and then citing Crystalline Silicon Photovoltaic

---

That argument fails. Commerce made a determination. It explained in the preliminary determination in the CVD case that it based its determination on the descriptions in the record. See CVD Prelim. Decision Memo. 2017 at 17, App'x I; Final Decision Memo. at 9–10. Commerce's failure to state underlying basis of that determination as supported by the descriptions in the record only obscures, rather than negates, the determination that it made.

<u>Cells, Whether or Not Assembled Into Modules, From the People's Republic of China</u>, 77 Fed. Reg. 63,788 (Dep't Commerce Oct. 17, 2012) (final CVD determination) and accompanying Issues and Decision Memo. at Cmt. 18). The Court of Appeals affirmed the Court's decision that the offset was reasonable, stating that Commerce's practice to offset the cash deposit rates "reasonably implements" the purpose of the statute while avoiding an inequitable double application of duties. <u>Jinko II</u>, 961 F.3d at 1183.

Therefore the statutory scheme, the Court of Appeals, and Commerce's past practice make clear that where Commerce imposes a CVD, it necessarily determines, inter alia, that a subsidy is either (i) a subsidy "that is, in law or in fact, contingent upon export performance" (ii) an import substitution subsidies which are "contingent upon the use of domestic goods over imported goods" or (iii) a domestic subsidy which is limited, "in law or in fact, to an enterprise or industry within the jurisdiction of the authority providing the subsidy." 19 U.S.C. § 1677(5A)(B)–(D); <u>see also</u> <u>Trina II</u>, 975 F.3d at 1329. Commerce may resort to facts otherwise available to reach its conclusion, <u>see</u> 19 U.S.C. § 1677e(a), and it may even apply an adverse inference in choosing among the facts otherwise available to reach its conclusion, but it nonetheless necessarily determines why the subsidy is specific and thus countervailable. <u>See</u> <u>Trina II</u>, 975 F.3d at 1329.

Here, Commerce declined to adjust Trina's reported export prices to offset subsidies for the Subject Programs, i.e.,: (1) Income Tax Reductions for Export-Oriented Enterprises; (2) Tax Refunds for Reinvestment of FIE Profits in Export-

Court No. 23-00213 Page 15

Oriented Enterprises; (3) Awards for Jiangsu Famous Brand Products; (4) Export Product Research and Development Fund; (5) Subsidies for Development of "Famous Brands" and China World Top Brands; and (6) Funds for Outward Expansion of Industries in Guangdong Province. Final Decision Memo. at 9–10. Commerce explains there is "no information on the record of this review indicating that these programs at issue are export contingent or that Commerce determined that these programs were export-contingent[.]"[8] Final Decision Memo. at 10. Yet Commerce preliminarily determined in the CVD case that, when applying facts available with an adverse inference, it "look[ed] to the Initiation Checklist, which provides descriptions of these subsidy programs, including the basis on which we found that reasonably available information indicated that these programs constituted a financial contribution and were specific." CVD Prelim. Decision Memo. 2017 at 17; see also Def. Resp. at 9 (noting that Commerce used the descriptions in the Initiation Checklist to determine whether programs were countervailable).

Commerce's decision not to offset the remaining subsidy programs is unsupported by substantial evidence because Commerce's claim that it did not determine how the subsidy was specific for these remaining programs is unsupported

---

[8] Commerce's statement is a bit perplexing. First, it identifies four out of the six programs using the word "export." Final Decision Memo. at 9. Second, it states there is no indication on the record "of this review," suggesting that there is information on the record of the CVD review. Id. Although the Court must review this case on the record before it, Commerce's statement suggests that Commerce recognizes that it had the information before it in the CVD proceeding and used that information as facts otherwise available. See Final Decision Memo. at 10.

by the record. Commerce referred to the "Initiation Checklist" in its 2017 preliminary CVD determination, and used "descriptions of these subsidy programs, including the basis on which we found that reasonably available information indicated that these programs constituted a financial contribution and were specific." CVD Prelim. Decision Memo. 2017 at 17. The Initiation Checklist for the CVD proceeding may not be on the record of this case, but it was on the record of the CVD case and the record in this case suggests that Commerce relied upon the descriptions in that checklist to make the determination that it was required to make. See Final Decision Memo. at 9–10. Commerce's generic description of its determination fails to mask that a determination was made. Accordingly, Commerce must explain what determination it made in the CVD case. Commerce may point to evidence in the record or reopen the record to explain its determination. Commerce should then apply 19 U.S.C. § 1677a(c)(1)(C), if appropriate.

## CONCLUSION

In accordance with the foregoing, it is

**ORDERED** that Commerce's refusal to offset Trina's U.S. sales price by the CVD imposed on Subject Programs in the CVD review because they were not export contingent is remanded for further explanation or consideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its remand redetermination with the court within 90 days of this date; and it is further

Court No. 23-00213 Page 17

**ORDERED** that the parties shall have 30 days after the filing the remand to file comments in opposition to the remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days after filing the comments in opposition to file replies in support of the remand redetermination; and it is further

**ORDERED** that the parties shall file the joint appendix within 14 days after the filing of replies to the comments on the remand redetermination; and it is further

**ORDERED** that Commerce shall file the administrative record within 14 days of the date of filing of its remand redetermination.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated:    August 20, 2024
          New York, New York