A-570-010<br>
Remand<br>
Slip Op. 24-96<br>
POR:  02/01/2021–01/31/2022<br>
**Public Version**<br>
E&C/OIV: PAO

*Trina Solar Co., Ltd., et al. v. United States*,
**Court No. 23-00213, Slip Op. 24-96 (CIT August 20, 2024)**
**Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT) in *Trina Solar Co. Ltd., et al. v. United States*.[1]  The CIT's *Remand Order* concerns the final results of the 2021-2022 administrative review of the antidumping duty (AD) order on certain crystalline silicon photovoltaic products (solar products), from the People's Republic of China (China).[2]  In its ruling, the CIT remanded the *AR 2021-22 Final Results* to Commerce to further explain or reconsider its decision not to adjust the prices of Trina's[3] sales of subject merchandise during the period of review (POR) by the countervailing duties imposed on certain programs in the *AR 2017 CVD Final Results*.[4]  Commerce did not make this adjustment in the *AR 2021-22*

---

[1] *See Trina Solar Co., Ltd., et al. v. United States*, Court No. 23-00213, Slip Op. 24-96 (CIT August 20, 2024) (*Remand Order*).
[2] *See Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021–2022*, 88 FR 62049 (September 8, 2023) (*AR 2021-22 Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[3] "Trina" refers to the single collapsed entity comprising the following companies:  Trina Solar (Changzhou) Science & Technology Co., Ltd.; Trina Solar Co., Ltd.; Yancheng Trina Guoneng Photovoltaic Technology Co., Ltd. (a.k.a. Yancheng Trina Solar Guoneng Science & Technology Co., Ltd.); Trina Solar Yiwu Technology Co., Ltd.; Trina Solar (Su Qian) Technology Co., Ltd.; Trina Solar Yancheng Dafeng) Co., Ltd.; Changzhou Trina Hezhong Photoelectric Co., Ltd. (a.k.a. Changzhou Trina Hezhong PV Co., Ltd.); Changzhou Trina Solar Yabang Energy Co., Ltd.; and Turpan Trina Solar Energy Co., Ltd.  *See AR 2021-22 Final Results*.
[4] *See Remand Order* at 16; *see also Certain Crystalline Silicon Photovoltaic Products from the People's Republic of

*Final Results* because it found that there was no indication in the *AR 2017 CVD Final Results* that Commerce based its adverse facts available (AFA) specificity determination on a finding that the programs at issue were export contingent.[5] Consistent with the CIT's opinion, on remand, Commerce has examined information related to Commerce's AFA specificity determinations in the *AR 2017 CVD Final Results* for the six subsidy programs at issue[6] and reconsidered whether to adjust the prices of Trina's sales of subject merchandise during the POR by the countervailing duties imposed on those programs.

## II.   BACKGROUND

On September 8, 2023, Commerce published the *AR 2021-22 Final Results*, in the *Federal Register*.[7]  Mandatory respondent Trina subsequently challenged Commerce's *AR 2021-22 Final Results* at the CIT.  On August 20, 2024, the CIT remanded the *AR 2021-22 Final Results* to Commerce for further explanation or reconsideration.  On November 21, 2024, Commerce released the Draft Remand Redetermination to interested parties for comment.[8]  On November 26, 2024, Commerce received comments on the Draft Remand Redetermination from

---

*China:  Preliminary Results of Countervailing Duty Administrative Review, and Rescission of Review in Part; 2017*, 84 FR 15585 (April 16, 2019) (*AR 2017 CVD Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM), unchanged in *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China:  Final Results of Countervailing Duty Administrative Review; 2017*; 84 FR 56765 (October 23, 2019) (*AR 2017 CVD Final Results*), and accompanying IDM.
[5] *See AR 2021-22 Final Results* IDM at Comment 3.
[6] *Id.*  Those programs are:  (1) Income Tax Reductions for Export-Oriented Enterprises; (2) Tax Refunds for Reinvestment of FIE Profits in the Export-Oriented Enterprises; (3) Awards for Jiangsu Famous Brand Products; (4) Export Product Research and Development Fund; (5) Subsidies for Development of "Famous Brands" and China World Top Brands; and (6) Funds for Outward Expansion of Industries in Guangdong Province.
[7] *Id.*
[8] *See* Draft Results of Redetermination Pursuant to Court Remand, *Trina Solar Co. Ltd., et al. v. United States*, Court No. 23-00213, Slip Op. 24-96 (CIT August 20, 2024) (Draft Remand Redetermination).

Trina.[9]  On December 9, 2024, Commerce received a summary of Trina's Comments on the Draft Remand Redetermination.[10]

### III.   REMANDED ISSUE

**Background**

In the *AR 2021-22 Final Results*, Commerce adjusted the prices of Trina's sales of subject merchandise during the POR by the countervailing duties imposed on certain programs that Commerce previously found to be specific because they were export contingent and found to be countervailable.[11]  However, Commerce did not adjust the prices of Trina's sales of subject merchandise during the POR by the countervailing duties imposed on the six programs at issue in this remand because "{w}hile Commerce found these programs to be specific in *Solar Products China CVD Final Results 2017* based on AFA, Commerce did not indicate that it based the specificity determination on a finding that the programs were export contingent."[12]

The CIT held "that where Commerce imposes a CVD, it necessarily determines, *inter alia*, that a subsidy is either (i) a subsidy 'that is, in law or in fact, contingent upon export performance' (ii) import substitution subsidies which are 'contingent upon the use of domestic goods over imported goods' or (iii) a domestic subsidy which is limited, 'in law or in fact, to an enterprise or industry within the jurisdiction of the authority providing the subsidy.'"[13]  Additionally, while noting that Commerce may resort to the facts otherwise available and may

---

[9] *See* Trina's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand" dated November 26, 2024 (Trina's Comments).
[10] *See* Trina's Letter, "Summary of Comments on Draft Results of Redetermination Pursuant to Court Remand" dated December 8, 2024 (Trina's Summary of Comments).
[11] *Id.*  Those programs are:  (1) Changzhou Treasury Bureau Support Fund for Exportation and International Market Development; (2) Exportation Credit Insurance Support Grant; (3) Sub-Central Government Subsidies for Development of "Famous Brands" and China World Top Brands; (4) Export Buyer's Credits from the China Export-Import Bank; and (5) Export Credit Insurance from SINOSURE.
[12] *Id.*
[13] *See Remand Order* at 14 (citing section 771(5A)(B)-(D) of the Act; and *Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1329 (Fed. Cir. 2020)).

even apply an adverse inference in choosing from among the facts otherwise available to find a subsidy program countervailable, the CIT held that Commerce "necessarily determines why the subsidy is specific and thus countervailable."[14] The CIT further held that Commerce's claim that it never determined the nature of the specificity of the six subsidy programs at issue in the *AR 2017 CVD Final Results* is unsupported by substantial evidence.[15] Specifically, the CIT noted that in the *AR 2017 CVD Preliminary Results*, Commerce indicated that it used descriptions of the subsidy programs at issue that were in the Initiation Checklist that Commerce issued in the countervailing duty (CVD) investigation of solar products from China (CVD Initiation Checklist) to make its AFA specificity determination for those programs.[16] Given this evidence, and the CIT's holding that, even when applying AFA, Commerce necessarily determines how a subsidy is specific,[17] the CIT remanded the *AR 2021-22 Final Results* to Commerce to further explain what type of specificity determination was made in the *AR 2017 CVD Final Results* and to explain or reconsider its decision not to adjust the prices of Trina's sales of subject merchandise during the POR by the countervailing duties imposed on the six programs at issue.[18]

**Analysis**

In the *AR 2017 CVD Preliminary Results*, as AFA, Commerce found the programs at issue to be countervailable under subsections 776(a) and (b) of the Tariff Act of 1930, as amended (the Act).[19] The CIT held that Commerce "necessarily determines" why a program is specific under section 771(5A) of the Act, even when relying on facts otherwise available with

---

[14] *Id.* at 14.
[15] *Id.* at 15-16.
[16] *Id.* at 16.
[17] *Id.* at 14.
[18] *Id.* at 16.
[19] *See AR 2017 CVD Preliminary Results* PDM at 13, unchanged in *AR 2017 CVD Final Results*.

an adverse inference.[20]  Further, in applying AFA, as noted by the CIT,[21] Commerce indicated in the *AR 2017 CVD Preliminary Results* that it looked "to the Initiation Checklist, which provides descriptions of these subsidy programs, including the basis on which we found that reasonably available information indicated that these programs constituted a financial contribution and were specific."[22]  Thus, the CIT held that "the record in this case suggests that Commerce relied upon the descriptions in that checklist to make the determination that it was required to make" regarding specificity.[23]

When a party fails to act to the best of its ability in a CVD proceeding, Commerce may find the subsidy programs at issue to be countervailable based on AFA.  Namely, Commerce may find that a subsidy program is specific based on AFA due to a lack of cooperation by the foreign government in providing information for Commerce to determine the specificity of the program at issue, including whether a subsidy program was specific as an export subsidy within the meaning of section 771(5A)(B) of the Act.  When applying AFA to a subsidy program that has not previously been used by a cooperating respondent, Commerce may examine information in the CVD Initiation Checklist to support an AFA decision that a program is specific under section 771(5A) of the Act.  While Commerce may examine information in the CVD Checklist in making an AFA decision that a program is specific under section 771(5A) of the Act, in doing so Commerce does not necessarily indicate how the program actually operates or whether any alleged subsidies under the program are, in fact, contingent upon exports.  For example, Commerce may initiate an investigation of a program based on one alleged type of specificity (*e.g.*, export contingency) only to ultimately find, based upon information supplied by

---

[20] *See Remand Order* at 11, 14.
[21] *Id.* at 16.
[22] *See AR 2017 CVD Preliminary Results* PDM at 13, unchanged in *AR 2017 CVD Final Results*.
[23] *See Remand Order* at 16.

cooperating respondents, that the program is specific for a different reason (*e.g.*, specificity on the basis of a *de jure* limitation or designated geographic limitation). In keeping with this practice, in the 2017 CVD administrative review of solar products from China, Commerce explained that, as AFA, it was finding the programs under consideration, among others, to be specific within the meaning of the Act (*e.g.*, subsections 771(5A)(B) and (D) of the Act) but it did not make a separate specificity determination for each subsidy program whereby it identified the nature of the specificity.[24]  For these reasons, we respectfully disagree with the CIT that Commerce made "determinations" with regard to the nature of the specificity of the subsidy programs at issue.  Nonetheless, in order to comply with the CIT's holding, we are, under respectful protest, relying on information in the CVD Initiation Checklist to determine a possible basis for the AFA specificity determination in the *AR 2017 CVD Final Results*.

As noted above, at issue are the following six subsidy programs that, as AFA, Commerce countervailed in the *AR 2017 CVD Final Results* but Commerce did not adjust the prices of Trina's sales of subject merchandise during the POR in the *AR 2021-22 Final Results* for the countervailing duties imposed on the programs:  (1) Income Tax Reductions for Export-Oriented Enterprises; (2) Tax Refunds for Reinvestment of FIE Profits in Export-Oriented Enterprises; (3) Awards for Jiangsu Famous Brand Products; (4) Export Product Research and Development Fund; (5) Subsidies for Development of "Famous Brands" and China World Top Brands; and (6) Funds for Outward Expansion of Industries in Guangdong Province.  As directed by the CIT, we examined the descriptions of the programs at issue in the CVD Initiation Checklist, as well as other relevant records from another segment of that proceeding, as necessary, and in accordance

---

[24] *See AR 2017 CVD Preliminary Results* PDM at 13 (applying AFA to "programs discussed in the Initiation Checklist, but which Commerce found not to have been used during the investigation"); *see also Solar Products Inv. Final* IDM at Section VIII.B (identifying 14 programs as "Programs Determined To Be Not Used by the Respondent Companies During the POI or To Not Provide Countervailable Benefits During the POI").

with language in the *AR 2017 CVD Final Results*. Namely, five of the six programs at issue were alleged in the petition that lead to the CVD proceeding on solar products from China and thus, discussed in the CVD Initiation Checklist; however, one program – Awards for Jiangsu Famous Brand Products – was later identified by one of the respondents in the CVD investigation of solar products from China, and thus, was not discussed in the CVD Initiation Checklist.

Regarding the five programs discussed in the CVD Initiation Checklist, the descriptions of the (1) Export Product Research and Development Fund; (2) Subsidies for Development of "Famous Brands" and China World Top Brands; and (3) Funds for Outward Expansion of Industries in Guangdong Province programs in the CVD Initiation Checklist indicate that Commerce based its decision to initiate an investigation of these programs on allegations that the programs were contingent upon export activities, and thus, specific under section 771(5A)(B) of the Act.[25] Because Commerce initiated a CVD investigation of these three programs solely based on allegations that the programs were contingent upon export activity/performance, we conclude that the available evidence supporting Commerce's AFA determination in the *AR 2017 CVD Final Results* shows that these three programs provided export subsidies. Thus, in this remand redetermination, we adjusted the prices of Trina's sales of subject merchandise during the POR by the countervailing duties imposed to offset the subsidies provided by these programs.

Concerning the Income Tax Reductions for Export-Oriented Enterprises and the Tax Refunds for Reinvestment of FIE Profits in Export-Oriented Enterprises programs, information

---

[25] *See* Memorandum "Antidumping Duty Order on Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Remand Redetermination Slip Op. 24-96," dated November 7, 2024, at Attachment (pages 7, 8, and 10 of the CVD Initiation Checklist) (Checklist Memorandum).

7

in the CVD Initiation Checklist indicates that Commerce based its decision to initiate an investigation of these programs on multiple specificity allegations. For example, the petitioner in the CVD investigation, alleged that the Income Tax Reductions for Export-Oriented Foreign-Invested Enterprises program, was "specific because it is limited to FIEs, and is contingent upon export performance."[26] Regarding the Tax Refunds for Reinvestment of FIE Profits in Export-Oriented Enterprises program, the petitioner alleged that the program was specific "because the recipients are limited to a group of enterprises or industries" consistent with section 771(5A)(D)(i) of the Act and because the program was "contingent on export performance, making it specific under section 771(5A)(B) of the Act."[27] Given the multiple specificity allegations on which Commerce relied to initiate an investigation of the Income Tax Reductions for Export-Oriented Foreign-Invested Enterprises and the Tax Refunds for Reinvestment of FIE Profits in Export-Oriented Enterprises programs, we find that there is insufficient evidence to conclude that Commerce based its AFA determination in the 2017 CVD administrative review of solar products from China on a determination that the programs were export contingent. Therefore, we have not adjusted the prices of Trina's sales of subject merchandise during the POR by the countervailing duties imposed to offset the subsidies provided by these programs. Moreover, making such an adjustment would inappropriately reward noncompliance with Commerce's requests for information in the 2017 CVD administrative review of solar products from China wherein the GOC failed to act to the best of its ability "by not responding to our CVD Questionnaire, which included questions regarding those programs;"[28] thus, curbing an incentive for cooperation in future segments of CVD proceedings involving these programs.

---

[26] *Id.* at Attachment (page 20 of the CVD Initiation Checklist).
[27] *Id.* at Attachment (pages 23-24 of the CVD Initiation Checklist).
[28] *See AR 2017 CVD Preliminary Results* PDM at 13.

Concerning the final subsidy program at issue, Awards for Jiangsu Famous Brand Products, this program was not discussed in the CVD Initiation Checklist because it was a later identified program, as noted above.[29] Accordingly, Commerce looked for relevant information elsewhere in the *AR 2017 CVD Preliminary Results* to explain what type of specificity determination was made, in accordance with the CIT's order that "Commerce must explain what determination it made in the CVD case."[30] In the *AR 2017 CVD Preliminary Results*, Commerce stated that:

> For the programs that Commerce has previously found to be countervailable, in part because these programs constituted a financial contribution by an authority and were specific,[31] we are continuing to find these programs to constitute a financial contribution by an authority and to be specific. It is Commerce's practice not to revisit financial contribution and specificity determinations made in a prior segment of the same proceeding, absent the presentation of new facts or evidence.[32]

The "Awards for Jiangsu Famous Brand Products" program was treated as a [

  ] in the 2014-2015 administrative review of the CVD order on solar products from China, the most recently completed review of the order wherein a respondent used this program prior to issuance of the *AR 2021-22 Final Results*. In the *2014-15 CVD Solar Products Review*, Commerce indicated that this program provided a [            ], not an export subsidy.[33] Further, the *AR 2017 CVD Final Results* do not discuss any "new facts or evidence" to indicate

---

[29] *See generally* Checklist Memorandum.
[30] *See Remand Order* at 16.
[31] *See Solar Products CVD Inv. Final* IDM at sections VIII.A and B.1.a; and *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Final Results of Countervailing Duty Administrative Review, and Partial Rescission of Countervailing Duty Administrative Review; 2014-2015*, 82 FR 42792 (September 12, 2017) (*2014-15 CVD Solar Products Review*), and accompanying IDM section X.A. We are now clarifying that the program, Export Buyer's Credits from the China Export-Import Bank, is export-contingent, pursuant to section 771(5A)(B) of the Act.
[32] *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2012*, 80 FR 41003 (July 14, 2015), and accompanying IDM at 27 n.130 ("{i}n a CVD administrative review, we do not revisit past determinations of countervailability made in the proceeding, absent new information.").
[33] *See* Memorandum "Antidumping Duty Order on Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Remand Redetermination Slip Op. 24-96," dated November 13, 2024, at the Excel spreadsheet (2014-15 CVD Solar Products Review Calculation Worksheet).

9

that Commerce revisited its specificity determination made in a prior segment of the same proceeding for this program.[34] Thus, because Commerce explained in the *AR 2017 CVD Preliminary Results* that it is "Commerce's practice not to revisit financial contribution and specificity determinations made in a prior segment of the same proceeding, absent the presentation of new facts or evidence,"[35] and the "Awards for Jiangsu Famous Brand Products" program was previously treated as a [      ] subsidy in the *2014-15 CVD Solar Products Review*, we therefore find no basis for adjusting the prices of Trina's sales of subject merchandise during the POR by the countervailing duties imposed to offset the subsidies provided by this program.[36]

Based upon the above analysis, we have revised the cash deposit rate for Trina from 10.50 percent to 9.09 percent *ad valorem*.[37]

## IV. INTERESTED PARTY COMMENTS

*Trina's Comments:*

The following is Trina's summary of its argument.[38] For further details, *see* Trina's Comments at 2-4.

> In the {Draft Remand Redetermination}, {Commerce} determined that three out of the six countervailable programs at issue were specific under section 771(5A)(B) of the Act. For two of the programs, {Commerce} stated that the multiple specificity found in the Income Tax Reductions for Export-Oriented Enterprises and the Tax Refunds for Reinvestment of FIE Profits in Export-Oriented Enterprises programs meant that there is insufficient evidence for Commerce to conclude that the benefits were contingent upon export activities.
>
> However, the existence of multiple bases for specificity does not negate the evidence that the programs were contingent upon export activities and thus, specific under {section 771(5A)(B) of the Act}. The statute states that "an export subsidy is a subsidy that is, in law or in fact, contingent upon export performance, alone or

---

[34] *See AR 2017 CVD Preliminary Results* PDM.
[35] *Id.* at 12.
[36] *See* section 772(c)(1)(C) of the Act.
[37] *See* Memorandum, "Draft Remand Redetermination Analysis Memorandum," dated November 20, 2024.
[38] *See* Trina's Summary of Comments at 2-3.

10

as 1 of 2 or more conditions." As such, an export subsidy is an export subsidy whether it is solely based on export performance or on multiple conditions, so long as it is contingent on export. Consequently and as required under {section 771}(c)(1)(C) {of the Act}, {Commerce} is required to make adjustments for export subsidies and the fact that there is an additional basis for specificity is irrelevant (*citations omitted*).

{Commerce} claims that the program, Awards for Jiangsu Famous Brand Products, was not discussed in the Initiation Checklist. {Commerce} overlooked reference to this program in the Initiation Checklist as this program was discussed in the CVD Initiation Checklist. Under the program name "Sub-Central Government Subsidies for Development of 'Famous Brands' and China World Top Brands," {Commerce} defined "sub-central" as provincial and local governments, and cited specifically to Jiangsu Province as part of the example Petitioner provided in identifying the subsidy program. The CVD Initiation Checklist states that "several cities and provinces in {China} (*e.g.*, Wuxi City, and Jiangxi and Jiangsu Provinces) have their own famous brand programs" and that "Petitioner contends that this subsidy is specific under section 771(5A)(B) of the Act because it is contingent upon export activity." Accordingly, Commerce must increase Trina's U.S. selling price to adjust for the export subsidy countervailed (*citations omitted*).

**Commerce's Position:**

Trina argues that Commerce should have included the subsidy rates calculated in the *AR 2017 CVD Final Results* for the Income Tax Reductions for Export-Oriented Enterprises and the Tax Refunds for Reinvestment of FIE Profits in Export-Oriented Enterprises programs in the export subsidy offset applied to Trina's dumping margin in the *AR 2021-22 Final Results* because: (1) the CVD initiation Checklist indicates that Commerce's decision to initiate investigations on the programs were based, in part, on allegations that the programs conferred benefits that were contingent upon export sales; and (2) the statute states that "an export subsidy is a subsidy that is, in law or in fact, contingent upon export performance, alone or as 1 of 2 or more conditions."[39] We disagree.

At the initiation stage of an investigation, Commerce has yet to receive any information from the administering authority or mandatory respondents as to how the programs on which

---

[39] *See* section 771(5A)(B) of the Act.

11

Commerce initiated its investigation actually operated during the period of investigation.[40] Thus, at the time of the initiation, Commerce cannot ascertain whether a given program that allegedly meets several specificity prongs (including the export contingent specificity prong), is in fact, export contingent.

Further, Commerce's application of AFA in the *AR 2017 CVD Final Results* relied on the initiation decisions in the CVD Initiation Checklist,[41] that, in turn, adhered to Commerce's initiation standard.[42] Under section 702(b) of the Act, the petitioner must allege the elements necessary for the imposition of a CVD under section 701(a) of the Act; *i.e.*, the existence of countervailable subsidies and material injury, or threat of material injury, by reason of the subsidized imports. Additionally, section 702(b)(1) of the Act requires that these allegations be supported by *information reasonably available* to petitioners (emphasis added). Meanwhile, section 771(5A)(B) of the Act states that a countervailable subsidy is an export subsidy if it is "…in law or in fact, contingent upon export performance, alone or as 1 of 2 or more conditions." Thus, for initiation purposes the statute requires that petitioners sufficiently allege the elements necessary for the imposition of a duty under the Act based on information that is "reasonably available" and does represent a final determination that the nature of the program , including how the program is specific as required under section 771 5(A)(B) of the Act. Therefore, we disagree with Trina that the language in section 771(5A)(B) of the Act, that a subsidy is an export subsidy if export activity is contingent upon 1 of 2 or more conditions indicates that Commerce determined in the *2017 CVD Final Results* that these programs were specific as export subsidies such that an offset is required here. Commerce made no such clarification in the *2017 CVD*

---

[40] *See* section 702 of the Act.
[41] *See AR 2017 CVD Preliminary Results* PDM at 12-13.
[42] *See* Checklist Memorandum at 6-7.

12

*Final Results*, and given the multiple bases for initiation on specificity, there is insufficient evidence to conclude that Commerce based its AFA final determination in the 2017 CVD administrative review of solar products from China on a determination that the programs were export contingent.

Accordingly, for the above reasons, in this remand proceeding we have continued not to include an export subsidy offset to Trina's dumping margin in the *AR 2021-22 Final Results* as it regards the Income Tax Reductions for Export-Oriented Enterprises and the Tax Refunds for Reinvestment of FIE Profits in Export-Oriented Enterprises programs.

We also disagree with Trina's argument that Commerce's reference to the "Sub-Central Government Subsidies for Development of 'Famous Brands' and China World Top Brands" program in the CVD Initiation Checklist encompasses the "Awards for Jiangsu Famous Brand Products" program that is at issue here, and thus, should compel Commerce to use the AFA rate calculated for this program in the *AR 2017 CVD Final Results* as an export subsidy offset that is applied to Trina's dumping margin in the *AR 2021-22 Final Results*. Regardless of whether Commerce treated the "Awards for Jiangsu Famous Brand Products" program as part of the "Sub-Central Government Subsidies for Development of 'Famous Brands' and China World Top Brands" program in the CVD Initiation Checklist and, in turn, based its decision to initiate on the central government- and sub-central government-level Famous Brand programs as alleged export subsidies, the fact remains that subsequent to the issuance of the CVD Initiation Checklist, Commerce treated the Awards for Jiangsu Famous Brand Products program as an untied subsidy (*i.e.*, we did not treat the program as an export subsidy).[43] Commerce's practice is not to revisit financial contribution and specificity determinations made in a prior segment of the same

---

[43] *See* 2014-15 CVD Solar Products Review Calculation Worksheet.

13

proceeding, absent the presentation of new facts or evidence.[44]  In accordance with this practice, Commerce stated in the *AR 2021-22 Final Results* that "where Commerce previously found a program to be countervailable, in part because the program constituted a financial contribution by an authority and was specific, it continued to find the program to constitute a financial contribution by an authority and to be specific"[45]  Similarly, in the 2017 CVD administrative review of solar products from China, on which Commerce based its export subsidy adjustment decisions in the *AR 2021-22 Final Results*, Commerce stated that:

> For the programs that Commerce has previously found to be countervailable, in part because these programs constituted a financial contribution by an authority and were specific, we are continuing to find these programs to constitute a financial contribution by an authority and to be specific.[46]

Thus, in accordance with these statements, we continue to find that Commerce's *actual*, *most recent*, calculation, namely Commerce's approach in the *AR 2017 CVD Final Results*, where Commerce treated the Awards for Jiangsu Famous Brand Products program as an untied subsidy reflects that Commerce did not treat this program as an export subsidy and thus, Commerce should not offset this program in this AD review.

---

[44] *See Common Alloy Aluminum Sheet from the Republic of Turkiye:  Final Results of Countervailing Duty Administrative Review; 2022*, 89 FR 89960 (November 14, 2024), and accompanying IDM at 11.
[45] *See AR 2021-22 Final Results* IDM at Comment 3.
[46] *See AR 2017 CVD Preliminary Results* PDM at 12.

V.  **FINAL RESULTS OF REDETERMINATION**

In accordance with the Court's Remand Order, we have: (1) under respectful protest, applied an export subsidy offset to Trina's dumping margin in the *AR 2021-22 Final Results* that is equal to the net subsidy rates calculated in the *AR 2017 CVD Final Results* for the Export Product Research and Development Fund, Subsidies for Development of "Famous Brands" and China World Top Brands, and Funds for Outward Expansion of Industries in Guangdong Province programs; and (2) not applied an export subsidy offset to Trina's dumping margin in the *AR 2021-22 Final Results* in connection with the Income Tax Reductions for Export-Oriented Enterprises, Tax Refunds for Reinvestment of FIE Profits in Export-Oriented Enterprises, and Awards for Jiangsu Famous Brand Products programs. Accordingly, we have not recalculated as Trina proposed,[47] but rather revised the cash deposit rate for Trina from 10.50 percent to 9.09 percent *ad valorem*.[48]

Should the CIT affirm these final results of redetermination, Commerce will issue applicable instructions to U.S. Customs and Border Protection.

12/18/2024

X _____

Signed by: ABDELALI ELOUARADIA
Abdelali Elouaradia
Deputy Assistant Secretary
  for Enforcement and Compliance

---

[47] *See* Trina's Comments at 4.
[48] *See* Memorandum, "Draft Remand Redetermination Analysis Memorandum," dated November 21, 2024. Our revision to Trina's dumping margin is unchanged from the Draft Results.